IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Anthony Wise, | ) Civil Action No. 3:06-1479-CMC-JRM |
| Plaintiff, | ) |
| vs. | ) |
| Georgia-Pacific Corp., | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

Plaintiff, Anthony Wise ("Wise"), is a former employee of defendant, Georgia-Pacific Corp., ("Georgia-Pacific"). He filed his complaint in this action on May 15, 2006, alleging that he was terminated because of his race in violation of 42 U.S.C. § 2000e-2(a) ("Title VII") and 28 U.S.C. § 623(a), the Age Discrimination in Employment Act ("ADEA").[1] Georgia-Pacific filed a motion for summary judgment on November 27, 2006. Wise filed a response on January 8, 2007. Georgia-Pacific filed a reply on January 19, 2007.

**Standard for Summary Judgment**

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that

---

[1]The complaint was filed pro se. Counsel made an appearance after a Roseboro order was issued, when plaintiff's response to the motion for summary judgment was filed.

summary judgment is never appropriate in these cases. To the contrary, "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [see Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corporation, 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir.

2

1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547 (5th Cir. 1987) and <u>Evans v. Technologies Applications & Services Co.</u>, 875 F. Supp. 1115 (D.Md. 1995).

**Facts**

The record reveals the following facts in the light most favorable to Wise:

1. Wise is an African-American male who, at relevant times, was over the age of forty.

2. Wise worked for Georgia-Pacific off and on at its Chip and Saw Plant in Prosperity, South Carolina ("the Plant") since the 1970's. (Pl. Aff., ¶ 1).

3. Lynda McCarty ("McCarty"), a Caucasian, became manager of the Plant in April of 1997 (Pl. Aff., ¶ 3; McCarty Aff., ¶¶ 1-2).

4. In October of 2002, Wise was promoted from Leadman for the Stacker/Kiln Operators to Hourly Supervisor for the Stacker/Kiln and General Plant Cleanup ("Stacker/Kiln Supervisor"). (Pl. Aff., ¶ 4; McCarty Aff., ¶ 4).[2]

5. Wise became "responsible for supervising approximately eleven employees, and overseeing the daily operations of the Stacker/Kiln, as well as evaluating, and disciplining employees under his supervision." (McCarty Aff., ¶ 5; Pl. Dep., 32).

6. Wise received training from Georgia-Pacific for leadership and supervising employees before and after his promotion. (Pl. Dep. 35-36; McCarty Af., ¶ 6).

---

[2]In his affidavit (Ex. A to the summary judgment response), Wise discusses a number of Caucasians who were promoted to Stacker/Kiln Supervisor before he was promoted. However, based on the allegations of the complaint and Wise's Charge with the South Carolina Human Affairs Commission ("SCHAC") (Def. Mem, Ex. D) he has not raised a claim of failure to promote based on race and/or age.

7.  Georgia-Pacific's policy[3] at the Plant provided a system for supervisors to discipline subordinates by using a written form ("Report of Reprimand") which was to be reviewed by upper management. (McCarty Aff., ¶ 8; Reynolds Aff., ¶ 8).

8.  One of the employees under Wise's supervision was Martha Profitt ("Profitt"),[4] an African-American female. Between 1997 and June of 2001, Wise and Profitt had an intimate relationship which was known to management at the Plant. (Pl. Aff., ¶¶ 6-7).

9.  Profitt learned of Wise's involvement with another woman after October of 2002 and friction developed between them in the workplace. (Pl. Aff., ¶ 7).

10. Paula Reynolds ("Reynolds"), a Caucasian female, was Georgia-Pacific's Human Resource Manager at the Plant. (Reynolds' Aff., ¶ 3).

11. On October 23, 2003, Wise explained his previous relationship with Profitt to Reynolds and complained to Reynolds that Profitt was falsely telling other employees that he was sexually harassing her. (Pl. Dep. 66; Pl. Aff. ¶ 8; Reynolds Aff., ¶ 9).

12. Reynolds then interviewed Profitt who admitted the past relationship with Wise. Profitt also told Reynolds that Wise was sexually harassing her and wrongfully writing her up for disciplinary infractions. (Reynolds Aff., ¶ 10).

13. Reynolds informed McCarty of her intention to "conduct a comprehensive investigation" of the situation (Reynolds Aff., ¶ 11).

14. McCarty suspended Wise and Profitt during the two-week investigation. (McCarty Aff., ¶ 11; Pl. Aff., ¶ 8).

---

[3]A copy of this policy is not a part of the record.

[4]Profitt's name is spelled several different ways in the record.

4

15.   Reynolds first reinterviewed Wise (Reynolds Aff., ¶ 12).

16.   Reynolds also interviewed other employees who were critical of Wise and his relationship with Profitt (Reynolds Aff., ¶ 16).

17.   Reynolds discovered eleven Report of Reprimand forms which were filled out by Wise but never forwarded to management as required by the Plant's policy.[5] (Reynolds Aff., ¶ 17).

18.   Reynolds met with Wise to discuss the investigation on November 7, 2003. Wise acknowledged the proper procedure for handling Report of Reprimand forms, and when asked about the incomplete forms uncovered during the investigation stated, "So I messed up a few warnings, I'll do better next time." (Reynolds Aff., ¶ 19).

19.   At the conclusion of the investigation, McCarty and Reynolds concluded that Wise "probably engaged in inappropriate conduct" toward Profitt and misused the Report of Reprimand forms in violation of policy. (McCarty Aff., ¶ 16; Reynolds Aff., ¶ 20).

20.   On November 14, 2003, McCarty and Reynolds met with Wise and McCarty terminated him. (Pl. Dep., 69-70; McCarty Aff., ¶ 18; Reynolds Aff., ¶ 21).

21.   McCarty and Reynolds met with Profitt and issued her a written warning for "argumentative and disruptive behavior. (McCarty Aff., ¶ 19; Reynolds Aff., ¶ 22).

22.   Wise filed a Charge of Discrimination with SCHAC alleging that he was terminated because of his race. (Def. Mem., Ex. D).

---

[5]These forms are attached to Reynolds' affidavit as an exhibit.

**Discussion**

Georgia-Pacific asserts that it is entitled to summary judgment because Wise cannot establish a prima facie case of race discrimination. It cites a framework approved by the Fourth Circuit to analyze a claim based on disparate treatment in discipline. (Def. Mem., 10). Wise does not address Georgia-Pacific's arguments, but instead asserts that the can establish a prima facie case of race discrimination under a different standard. (Pl. Mem., 8-10). In its reply, Georgia-Pacific argues that the framework cited by Wise is inappropriate (Reply Mem., 5-6).

Georgia-Pacific also argues that it is entitled to summary judgment on Wise's ADEA claim because Wise failed to include that claim in his SCHAC charge. Wise has not responded to this argument.

1. Title VII

    Title 42 U.S.C. § 2000e-2a states in part:

    > It shall be an unlawful employment practice for an employer--
    >
    > (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . .

This is a disparate treatment case and Wise must prove that "but for" his race, he would not have been disciplined more harshly than his Caucasian comparators. Holmes v. Bevilacqua, 794 F.2d 142 (4th Cir. 1986). Wise can prove defendant's motive to discriminate by two methods. First, the "plaintiff may meet this burden under the ordinary standards of proof by direct and indirect evidence relevant to and sufficiently probative of the issue. In the alternative, a plaintiff may resort to the judicially created scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981)." EEOC v. Clay Printing Company, 955 F.2d 936 (4th Cir. 1992).

To overcome a motion for summary judgment, under the ordinary standards of proof, Wise is required to "produce direct evidence of a stated purpose to discriminate on the basis of race and/or circumstantial evidence of a stated purpose to discriminate on the basis of race of sufficient probative force to reflect a genuine issue of material fact." Goldberg v. B. Green and Co., Inc., 836 F.2d 845 (4th Cir. 1988). In the absence of direct or indirect proof plaintiff can employ the McDonnell Douglas scheme to establish a prima facie case of discrimination.

Since Wise's claim is based on discipline for misconduct, he must show:

1. He is a member of a protected class;

2. He engaged in prohibited conduct comparable in seriousness to employees outside the protected class; and

3. He was subjected to disciplinary measures more severe than those imposed on the employee outside the protected class.

See Moore v. City of Charlotte, NC, 754 F.2d 1100 (4th Cir.), *cert. denied*, 472 U.S. 1021 (1985); Cook v. CSX Transportation Corporation, 988 F.2d 507 (4th Cir. 1993); and Hughes v. Bedsole, *cert. denied*, 516 U.S. 870 (1995).

If a plaintiff establishes a prima facie case, a rebuttable presumption is created that the discharge was due to unlawful discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 504 (1993). The defendant must then come forward with a legitimate, non-discriminatory explanation for its action. When the defendant does so, the presumption of discrimination evaporates, and plaintiff must prove that the defendants' proffered reason is pretextual and that the discharge was due to unlawful discrimination. Id.

7

Therefore, Wise must show that he was more severely disciplined than his Caucasian comparator for engaging in comparable conduct. To make this showing, he must show that he and his comparators were "similarly situated." In order for the Court to determine whether Wise and his comparators were similarly situated, the Court "'must look at all relevant factors, the number of which depends on the context of the case.'" Disher v. Weaver, 308 F.Supp.2d 614, 621 (M.D.N.C. 2004), quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 619 (7th Cir. 2000)." "Summary judgment for the employer is proper under a discriminatory enforcement claim where the plaintiff has not proffered sufficient evidence that similarly situated white employees were treated more favorably." Gaither v. Wake Forest Univ., 129 F.Supp.2d 863, 869 (M.D.N.C. 2000). When analyzing plaintiff's claim, the Court must consider the entire record and not merely focus on a single part of the record. Carter v. Ball, 33 F.3d 450 (4th Cir. 1994). Although the Fourth Circuit has given little guidance on this issue, it has been noted that "a plaintiff must show that he or she was similarly situated to other employees from outside his protected class in all relevant aspects." Truesdale v. Potter, 2003 WL 1522945, *5 (M.D.N.C. 2003), citing Radue, 219 F.3d at 617; Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). This generally means that plaintiff and his comparators "dealt with the same supervisor, [were] subject to the same standards and...engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (citing Maggella v. RCA Global Communications, Inc., 642 F. Supp. 1531 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987). "When different decision makers are involved, two decisions are rarely 'similarly situated in all relevant respects.'" Harvey v. Anheuser-Busch, Inc., 38 F3d 968, 972 (8th Cir. 1994).

Additionally, a plaintiff must offer sufficient proof to show that the similarly situated person from outside his protected class were not similarly disciplined for like offenses. Moore, 754 F.2d at 1107-11. While the conduct does not have to be identical, the similarly situated employee must have engaged in conduct of "comparable seriousness." Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993).

Georgia-Pacific correctly cites this framework and argues that Wise cannot establish a prima facie case of race discrimination because he cannot show he was treated more harshly than similarly situated Caucasian employees. (Def. Mem., 10). In his SCHAC charge, Wise stated that he was told by Georgia-Pacific that he was terminated because his "paperwork was done wrong." He also stated that this reason was "pretext" because "a white employee was written up and sent to class, but I was suspended and fired." (Def. Mem., Ex. D). Wise made a similar allegation in his pro se complaint.

Georgia-Pacific explored Wise's claim of disparate discipline at his deposition. Wise identified three Caucasian supervisors, Mike Shealy, Bo Wicker, and Chris Parks, who violated a company policy but were not terminated. (Pl. Dep. 89). According to Wise, Shealy got into a fight with a subordinate (Id.), Wicker appeared for work intoxicated on one occasion (Pl. Dep. 94-95) and Parks falsified records by changing computer data (Pl. Dep. 104). McCarty's affidavit addresses and differentiates the actions of each of these comparators and Wise. Shealy grabbed an hourly employee on one occasion in self defense. McCarty determined that his action was inappropriate, gave him a written reprimand and required him to attend counseling. (McCarty Aff., ¶ 33). McCarty had personal interaction with Wicker on the occasion that Wise alleged he was intoxicated and determined that he was not under the influence. (McCarty Aff., ¶ 24). The incident with Parks

involved over drying a load of lumber. Both Wise and Parks were given reprimands for the incident, and the investigation did not reveal submission of any falsified documents.

Georgia-Pacific asserts that the conduct of Shealy, Wicker and Parks was not of comparable seriousness to Wise's violations. None of the comparators was accused of sexual harassment or of failing to follow policy with respect to discipline. Wise does not address the comparators in his memorandum. Based on this record, the undersigned concludes that Wise has failed to establish a prima facie case of disparate discipline based on race.

As noted above, Wise employs a different disparate treatment framework. Wise asserts that he can establish a prima facie case of racially motivated termination by showing: "(1) that he is a member of a protected class, (2) that he was qualified for the position, (3) that he was discharged from that position, and (4) that the position remained open and was ultimately filled by an employee outside the protected class." (Pl. Mem., 8 and 9). Wise cites only St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993) as authority. Review of that case shows that Wise has used a variation of the prima facie case framework actually stated. Hicks involved a demotion and a later termination.

Cases involving discriminatory termination unrelated to discipline employ a prima facie framework, sometimes combined with the "qualified for the job" requirement, that emphasizes that the employee was "performing [his duties] at a level that met his employer's legitimate expectations." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003), cert. denied, 540 U.S. 1073 (2003); Karpel v. Inova Health System Services, 134 F.3d 1222, 1228 (4th Cir. 1998); Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994); and Williams v. Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir. 1989). Wise argues that he was qualified for his position as Stacker/Kiln Supervisor but fails to discuss whether he was performing his duties to Georgia-Pacific's legitimate expectations. The

results of Georgia-Pacific's investigation showed that Wise was likely sexually harassing Profitt and using Report of Reprimand forms improperly, i.e., he was not satisfactorily performing his duties.

In any event, the undersigned concludes that the disparate discipline framework discussed above is appropriate for analysis of Wise's claims. He has not attempted to explain why this more specific framework should not be applied to his case.

Georgia-Pacific asserts that even if Wise could establish a prima facie case of discrimination, it has articulated legitimate, non-discriminatory reasons for his termination which he has not shown are pretexts for discrimination. These reasons are the results of Georgia-Pacific's internal investigation. Wise takes issue with the results of the investigation.

Once the employer states a legitimate, non-discriminatory reason for its action, the burden shifts to the employee to rebut that reason. The employee may do this by demonstrating that the reason proffered by the employer is false. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000). Alternately, the employee may show that the totality of the circumstances establishes that the employer's proffered reason, although factually supported, "was not the actual reason relied on, but was rather a false description of its reasoning...manufactured after the fact." Dennis v. Colleton Med. Ctr., Inc., 290 F.3d 639, 648 (4th Cir. 2002).

Georgia-Pacific asserts that its investigation revealed that Wise likely: (1) engaged in improper conduct toward Profitt in violation of its sexual harassment policy, and (2) used the Report of Reprimand forms to harass and manipulate his subordinates. (Def. Mem., 15). Wise argues that these reasons are unworthy of credence.

      a.     Sexual Harassment

Wise argues that "(t)he only evidence upon which Defendant can rely in support of its nondiscriminatory explanation is Ms. Profitt's accusation." (Pl. Mem., 17). This is incorrect. According to Reynolds, her interviews with other employees revealed that "Wise would often engage in arguments with Ms. Prophet, which they [the other employees] considered to be disruptive to the work environment. More specifically, the employees mentioned that Mr. Wise and Ms. Prophet would often argue before, during and even after staff meetings, which made then difficult to attend." (Reynolds Aff., ¶ 16). The investigation revealed an ongoing conflict between Wise and Profitt. Additionally, Wise's argument is undermined by his deposition testimony. Wise indicated that after the investigation, Georgia-Pacific determined that either he or Profitt would have to be terminated because of the continuing friction between them. (Pl. Dep. 125-26). This testimony affirms the findings of the investigation and implicitly supports the notion that those results, not Wise's race, was the true reason for the termination.

      b.     Report of Reprimand Forms

The Georgia-Pacific Business Code of Conduct section of "Fair Dealing" states that "(n)o one should take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misrepresentation of material facts or any other intentional unfair dealing." (McCarty Aff., ¶ 16). Georgia-Pacific's investigation showed Wise "was using the disciplinary action forms as a means of harassment, manipulation and intimidation of several" of his subordinates. (Id.) According to McCarthy, Georgia-Pacific's policy requires that "all disciplinary actions are to be completed on written forms and presented to the employee, who has the option to sign or refuse to sign the disciplinary action form. The disciplinary forms are then presented to

either me (the Plant Manager), or the Plant Superintendent for signature. Once the form has been signed, it is forwarded to the Human Resources Department for their review, and filed in the employee's personnel file." (McCarthy Aff., ¶ 8; Reynolds Aff., ¶ 8).

Wise argues that Georgia-Pacific, in an apparent violation of its own policy, "instructed Plaintiff not to file the Report of Reprimand forms with management in the case of minor offenses." (Pl. Mem., 12). He cites his deposition testimony and the affidavit of Scott Cloer (Pl. Mem., Ex. B) to support this contention. Review of the record shows that Wise's argument is unsupported.

The portion of Wise's testimony upon which he relies (p. 73) is not a part of the record.[6] Further, Wise's deposition testimony which is a part of the record appears to contradict his argument. Wise indicated that if a Report of Reprimand form was completed, a copy was to be submitted to Human Resources to be put in the employee's file. Minor infractions were informally recorded for discussion with the employee and a Report of Reprimand form was not filled out. (Pl. Dep., 74). Wise has not refuted his admission to Reynolds that he "messed up a few warnings." (Reynolds Aff., ¶ 19).

The Cloer affidavit does not support Wise's argument that Georgia-Pacific instructed Wise and other supervisors to violate its policy concerning use of the Report of Reprimand forms. Cloer states that "(a)s supervisors there was a standard of practice that we followed in regard to employee discipline." (Cloer Aff., ¶ 3). Cloer implies that this "standard of practice was followed by the

---

[6]Georgia-Pacific attached excerpts of Wise's deposition to its memoranda to support its arguments. Wise did not submit any portions of his deposition. This specific page, and many others to which Wise refers, have not been submitted.

supervisors." There is nothing in his affidavit that suggests that this violation of policy was sanctioned by McCarthy, Reynolds, or other management officials of Georgia-Pacific.[7]

Wise has not shown that Georgia-Pacific's investigation was a pretext for discrimination.

2.     ADEA

Wise alleges that he was terminated because of his age in violation of the ADEA. Georgia-Pacific argues that it is entitled to summary judgment because Wise failed to include this allegation in his SCHAC charge.  Review of the Charge shows that Wise only asserted a claim of race discrimination. (Def. Mem., Ex. D).  Wise has not responded to Georgia-Pacific's argument. This court lacks subject matter jurisdiction of Wise's ADEA claim because it was not included in the SCHAC charge.  29 U.S.C. § 626(d).

## Conclusion

Based on a review of the record, it is recommended that defendant's motion for summary judgment be granted.

                                       Respectfully submitted,

                                       s/Joseph R. McCrorey
                                       United States Magistrate Judge

March 27, 2007
Columbia, South Carolina

---

[7] Wise states in his affidavit that he was "taught" to do the Report of Reprimand forms in the manner he did (Pl. Aff., ¶ 5).  However, he does not state that he was taught to violate policy by management.

14